OPINION
{¶ 1} Carl W. Meeks, defendant-appellant, appeals from an October 24, 2006 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that divided marital property, awarded permanent spousal support and awarded child support in a divorce action involving Dolores H. Meeks, plaintiff-appellee. For the following reasons, we affirm. *Page 2 
 {¶ 2} Dolores and Carl were married on September 25, 1984 and have one child, Lacey, who is now over 18 years of age. The parties separated in March 2000 when Dolores and Lacey moved into a separate residence. Carl retained possession of the marital residence.
 {¶ 3} In June 2001, both parties filed separate divorce actions which were consolidated into case No. 01DR-06-2723. The case required the trial court to value and divide substantial marital assets. At the time of trial, Dolores owned a hair salon which the trial court valued at $100,000. Carl was a 50 percent shareholder in a limited liability company ("LLC") known as Team Investors, Ltd. ("Team Investors") that invested in real estate. Team Investors owned property located at 5542 Columbus Pike, Lewis Center, Ohio. This property sold for $2 million before journalization of the final decree of divorce. However, Carl and his business partner utilized a tax-free exchange and invested the proceeds in other real estate, thereby resulting in no direct distribution of funds to Team Investors. Team Investors was also a 50 percent shareholder in a partnership, Held Team Partnership ("Held Team") which also invested in real estate. Held Team owned property located at 5530 Columbus Pike, Lewis Center, Ohio. Although the parties anticipated that this property would be sold for $1.8 million prior to journalization of the final decree, this property did not sell. Carl also had other business interests and income sources including disability payments from the United States Department of Veterans Affairs ("VA"), and anticipated social security disability payments.
 {¶ 4} Following a trial during the summer of 2004, the trial court entered a divorce decree on March 1, 2005 that divided the marital property and awarded permanent spousal support and child support. *Page 3 
 {¶ 5} Particularly relevant here, the trial court awarded Dolores: (1) $287,491 for half of the marital equity of Team Investor's investment in the real estate located at 5542 Columbus Pike, payable by Carl within 30 days of the journalization of the decree and; (2) $127,500 for her half of the marital equity of Team Investor's investment in the real estate located at 5530 Columbus Pike, to be paid within 90 days of the journalization of the decree. The trial court also ordered Carl to pay Dolores permanent spousal support and child support.
 {¶ 6} Carl appealed the trial court's judgment. Dolores also appealed the trial court's judgment. However, the issues Dolores raised in the first appeal are not relevant to the issues now before us. Carl argued that the trial court erred when: (1) it ordered him to pay Dolores the estimated value of one-half of his interest in the real estate owned directly or indirectly by Team Investors because he received no proceeds from any sale of that real estate and; (2) it failed to take into consideration the tax consequences of a sale of this real estate in calculating Dolores' share of the marital portion of this investment.
 {¶ 7} This court addressed Carl's first argument as follows:
 With regard to the first argument, the trial court ordered Carl to pay Dolores $287,491.79 for her share of the martial portion of the 5542 Columbus Pike property, which the court valued at $2 million, and $127,500 for her share of the martial portion of the 5530 Columbus Pike property, which the court valued at $1.8 million. Carl complains that there were no proceeds for the 5542 Columbus Pike property sale because he and his business partner, Allan Blue, utilized a tax-free exchange to use the proceeds to invest in other real estate, thereby resulting in no direct distribution of funds to Team Investors. In addition, because the 5530 Columbus Pike property did not sell, he has never received any proceeds related to this property. Thus, Carl argues, because he received no proceeds from these properties, he has no money available to pay the trial court's award to Dolores. *Page 4 
 * * * In the present case, we cannot say the trial court erred in ordering Carl to pay $414,991.79 [$287,491.79 plus $127,500] as Dolores' share of the marital portion of the two Columbus Pike properties. Carl's appellate brief and written closing argument filed in the trial court are devoid of any alternative suggestion as to what arrangement he may have desired to assure Dolores received her share of the marital portion of the properties. It is the duty of this court to determine whether the trial court acted unreasonably, arbitrarily, or unconscionably. Presumably, Carl desires that the investment properties remain intact. However, there is no explanation as to how the investment properties may remain intact while still awarding Dolores half of the marital portion of the investments. Although the parties could have agreed upon a plan to somehow pay Dolores her due martial portion of the investments, they chose not to do so, thereby making it necessary for the trial court to resolve the matter.
 In simplest terms, the investment properties contained a portion of martial property, and the trial court divided that portion equally between the parties. How Carl chooses to extract Dolores' share of the marital portion from the investments or chooses to obtain a sum equal to the value of such share is left to his discretion. Carl's argument that he has no resources to pay the court's judgment is wholly unconvincing. In fact, Carl does have the resources necessary to pay Dolores her share of the marital portion of the property; however, the "resources" lay in the unliquidated value of the real estate, which the trial court did not order to be sold. We find the trial court did not err in granting Dolores one-half of the marital portion of the Columbus Pike properties based upon the fair market value of the properties at the time of the hearing.
Meeks v. Meeks, Franklin App. No. 05AP-315, 2006-Ohio-642, at ¶ 28-30.
 {¶ 8} Therefore, this court explicitly rejected Carl's contention that the trial court could not order him to pay Dolores one-half of the marital interest in the real estate even though he received no proceeds from the sale of the 5542 Columbus Pike property and the 5530 Columbus Pike property never sold. *Page 5 
 {¶ 9} Nevertheless, this court went on to agree with the second part of Carl's argument that the trial court erred when it failed to consider the tax consequences that would result from a sale of the real estate in calculating the value of Dolores' interest. Id. at ¶ 31-33. Therefore, this court reversed that portion of the trial court's judgment ordering Carl to pay Dolores $414,991 and remanded the matter to the trial court to recalculate the amount due after taking into account the tax consequences and other costs that would result from selling the properties. Id. at ¶ 33.
 {¶ 10} This court also found that the trial court erred in calculating Carl's spousal and child support obligations because it improperly included speculative social security disability payments in determining Carl's income. Accordingly, this court also reversed the spousal and child support portions of the trial court's judgment and remanded the case to the trial court for a redetermination of the amount of those awards. Id. at ¶ 41, 43.
 {¶ 11} On remand, the trial court specifically considered the tax consequences and other costs related to the marital interest in the properties located at 5542 and 5530 Columbus Pike. Based upon that assessment, the trial court ordered Carl to pay to Dolores $207,840.50 and $86,738.50 respectively for her interests in those properties. Said sums were to be paid within 60 days of the journalization of the October 24, 2006 judgment entry. The trial court also recalculated Dolores' interest in the marital residence and ordered Carl to pay $70,187.50 to Dolores within 60 days of the journalization of the judgment entry. The trial court ordered Carl to pay interest to Dolores at the rate of 8.25 percent on any awards not timely paid.
 {¶ 12} The trial court further ordered Carl to immediately pay his spousal support arrearage and a portion of Dolores' attorney fees, plus interest, from April 1, 2005. Lastly, *Page 6 
the trial court recalculated Carl's child support and spousal support obligations. Carl was ordered to pay $500.63 per month (plus the processing fee) in child support and $425 per month in spousal support.
 {¶ 13} Carl now appeals assigning the following errors:
 I. THE TRIAL COURT ERRED BY AWARDING JUDGMENT TO BE PAID IN 60 DAYS AGAINST DEFENDANT FOR A DOLLAR AMOUNT CALCULATED ON THE VALUE OF ONE-HALF OF REAL ESTATE OWNED BY A SEPARATE CORPORATE ENTITY WHERE DEFENDANT HAS INSUFFICIENT LIQUID ASSETS TO PAY THE JUDGMENT AND HE IS NOT A MAJORITY OWNER OF THE CORPORATE ENTITIY.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PERMANENT SPOUSAL SUPPORT TO PLAINTIFF GIVEN THE ASSETS AWARDED TO PLAINTIFF, DEFENDANT'S INCOME AND DEFENDANT'S DISABILITY.
 III. THE TRIAL COURT'S GUIDELINE CALCULATION IS CONTRARY TO THE FINANCIAL STRUCTURE EXISTING PURSUANT TO THE DECISION OF OCTOBER 24, 2006.
 {¶ 14} Carl argues in his first assignment of error that the trial court failed to understand that the property located at 5542 Columbus Pike and held by Team Investors was the subject of a land-swap transaction that did not generate cash proceeds, and that the property located at 5530 Columbus Pike never sold and, thus, remains a holding of Team Investors. To support his argument that the trial court failed to take lack of liquidity into account, Carl quotes from page four of the trial court's entry:
 * * * [I]t is ORDERED that the parties split equally the tax-effected proceeds of the business investment properties, with Defendant keeping the remainder of the gross proceeds to meet the costs of sale and taxes. * * * *Page 7 
 {¶ 15} Carl further argues in his first assignment of error that, as a 50 percent shareholder in the LLC, he does not control the LLC or the transactions that the LLC might pursue. Therefore, Carl contends that he is incapable of paying the amounts ordered by the trial court.
 {¶ 16} Carl asserts that the appropriate judgment for the trial court to enter under these circumstances is to award Dolores one-half of Carl's ownership interest in the LLC. According to Carl, Dolores would then receive her share of the distributions if and when the real estate in question is sold.
 {¶ 17} Carl further argues that because he cannot pay the judgment, the interest ordered by the trial court for failure to pay the judgment imposes on him an additional obligation to pay Dolores an estimated $30,000 in annual interest on the unpaid judgment — an amount he cannot afford to pay.
 {¶ 18} Dolores points out that Carl's first assignment of error is identical to one of the arguments Carl presented in his first appeal to this court. In the first appeal, Carl made a two-fold argument: (1) the trial court erred in ordering him to pay Dolores her share of the marital portion of the two properties when no proceeds were taken from the sale of the one property and the second property never sold; and (2) the trial court erred in failing to take into consideration the tax consequences and other costs associated with a sale of the two properties in calculating the value of Dolores' interest. As previously noted, this court, in the prior appeal, expressly rejected the first argument, but agreed with the second argument. Therefore, Dolores argues that the law of the case doctrine requires this court to overrule Carl's first assignment of error. We agree. *Page 9 
 {¶ 19} The doctrine of the law of the case is well established in Ohio. The doctrine provides that the "`decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe Fitters Union Loc. No. 392 v. Kokosing Constr. Co.,Inc. (1998), 81 Ohio St.3d 214, 218, quoting Nolan v. Nolan (1984),11 Ohio St.3d 1, 3. Thus, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Nolan, at 3. Likewise, the decision of an appellate court in a prior appeal will ordinarily be followed in a later appeal in the same case and court. Id. at 4.
 {¶ 20} The doctrine is considered to be a rule of practice, rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. Id. at 3. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. Id.
 {¶ 21} Although an appellate court may choose to reexamine the law of the case it has itself previously created if that is the only means to avoid injustice, such reexaminations must not be undertaken lightly nor encouraged as a common course of conduct for unsuccessful litigants.Weaver v. Motorists Mut. Ins. Co. (1990), 68 Ohio App.3d 547, 549;Pavlides v. Niles Gun Show, Inc. (1996), 112 Ohio App.3d 609, 615;Carr Supply, Inc. v. Rockford Homes, Inc., Franklin App. No. 02AP-960, 2003-Ohio-4676; Rose v. Rose (Sept. 27, 1999), Morrow App. No. CA-870 (overruling a portion of its prior appellate decision).
 {¶ 22} Carl's first assignment of error invites this court to either ignore or rewrite the law of the case that was established in the prior appeal to this court. Carl contends *Page 9 
that the trial court and this court in the prior appeal failed to understand that he received no proceeds from the sale of the 5542 Columbus Pike property and that the 5530 Columbus Pike property never sold. We disagree. Both courts clearly understood this point. Nevertheless, this court previously affirmed the trial court's order to require Carl to pay Dolores the value of her interest in the real estate, subject to a recalculation of that value after taking into account the tax consequences and other costs associated with a sale. Neither the trial court nor this court in the prior appeal believed that Carl was unable to raise the money necessary to pay Dolores the value of her interest in this real estate. Although we understand that Carl does not own a controlling interest in Team Investors, that does not mean he has no ability to influence Team Investors' decisions. Nor does it necessarily mean that he has no ability to use his ownership interest as a means to raise the money necessary to pay Dolores the value of her interest. The law of the case doctrine insures consistency of results and prevents endless litigation of the same issues in a case. The doctrine is not to be lightly disregarded. We are not persuaded that the application of the doctrine in this case results in an injustice. Accordingly, we overrule Carl's first assignment of error.
 {¶ 23} In his second assignment of error, Carl contends that "the trial court abused its discretion by awarding permanent spousal support to plaintiff given the assets awarded to plaintiff, defendant's income and defendant's disability."
 {¶ 24} Following the remand, the trial court entered a judgment granting Dolores permanent spousal support in the amount of $425 per month. The trial court's entry indicates that spousal support was premised upon a finding that Carl's annual income, imputed and actual, totaled $59,666, while Dolores' annual income was approximately *Page 10 
$49,307. The trial court calculated Carl's total by combining his VA income of $28,800 with his imputed income of $30,866 from the divorce decree. The trial court specifically stated that Carl's social security income was not included in his annual income.
 {¶ 25} The trial court also set forth in its entry the factors it considered in addition to its findings in the divorce decree. The trial court stated that, with respect to the R.C. 3105.18(C)(1) factors, it considered the marriage to be of long duration and that Carl earned a significantly larger income than Dolores throughout their marriage. Even now, the trial court found that Carl has the ability to earn at least $10,000 per year more than Dolores. Based upon the length of the marriage, the disparity in income, and the assets and liabilities of each party, the trial court found permanent spousal support to be equitable.
 {¶ 26} As previously noted, Dolores was awarded $207,840.50 and $86,738.50 respectively for each of the two properties held by Team Investors. Dolores was also awarded $70,187.50 as her share of the marital residence. Those three sums total $364,766.50. Carl points out that the trial court also awarded 8.25 percent interest on any amounts not timely paid. Based upon his assertion that he is unable to pay any of his obligations, he estimates that he will incur $30,000 in interest obligations per year to Dolores. In turn, Carl argues that the $30,000 in interest should be included as income to Dolores for purposes of determining whether spousal support to Dolores is equitable. In effect, Carl argues that his inability to pay the judgment, coupled with the interest that accrues, causes a $30,000 income shift from him to Dolores. According to Carl, Dolores' income should be increased from $49,000 to $79,000, and his income should be reduced from $59,666 to $29,666 for purposes of determining spousal support. We disagree. *Page 11 
 {¶ 27} Carl's argument presupposes that he is unable to pay the judgment. The trial court previously determined that Carl was able to pay Dolores the value of her interest in the marital assets. This court affirmed that aspect of the trial court's judgment. In fact, this court stated:
 Carl's argument that he has no resources to pay the court's judgment is wholly unconvincing. In fact, Carl does have the resources necessary to pay Dolores her share of the marital portion of the property[.]
Meeks at ¶ 30. Therefore, Carl's argument is based on a premise that both the trial court and this court previously rejected. The trial court did not err by failing to increase Dolores' income by $30,000 in calculating Carl's spousal support obligations.
 {¶ 28} Carl also seems to argue that the trial court was required to specifically address in its entry of October 24, 2006 each of the factors enumerated in R.C. 3105.18(C)(1) in reaching a determination of spousal support. We disagree. The statute does not impose this requirement. Moreover, the trial court specifically states in its entry that it determined the issue of spousal support based on the R.C.3105.18(C)(1) factors.
 {¶ 29} Accordingly, we overrule Carl's second assignment of error.
 {¶ 30} In his third assignment of error, Carl contends that "the trial court's guideline calculation is contrary to the financial structure existing pursuant to the decision of October 24, 2006." In its October 24, 2006 entry, the trial court recalculated Carl's child support obligation using an attached child support worksheet. Based on the worksheet, the trial court determined that Carl's child support obligation was $500.63 per month. The trial court also determined that Carl was in arrears on his child support payments and, thus, ordered Carl to pay an additional $100.13 per month until he extinguished the arrearage. *Page 12 
 {¶ 31} The trial court noted in its entry that Carl's child support obligation was recalculated after excluding social security disability payments from Carl's income as ordered by this court.
 {¶ 32} Carl challenges the trial court's calculation of child support on the same basis that he challenges the trial court's recalculation of spousal support. Carl argues that the trial court erred when it failed to reduce his income by $30,000 to reflect the annual interest expense he will incur due to his inability to pay the amounts awarded to Dolores in the judgment. Again, this assignment of error is based on a faulty factual premise. Both the trial court and this court have determined that Carl is capable is paying the judgment. Therefore, if he incurs an annual $30,000 interest obligation, he does so by choice. The trial court did not err by failing to reduce Carl's income by $30,000 in calculating child support.
 {¶ 33} We thus overrule Carl's third assignment of error.
 {¶ 34} Accordingly, we overrule Carl's three assignments of error and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
PETREE, J., concurs. WHITESIDE, J., dissents.
WHITESIDE, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.