[Cite as *State v. Armengau*, 2019-Ohio-1010.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                               :

      Plaintiff-Appellee,           :

                                            No. 18AP-276

v.                                           :       (C.P.C. No. 13CR-2217)

Javier H. Armengau,                          :       (REGULAR CALENDAR)

      Defendant-Appellant.         :

---

D E C I S I O N

Rendered on March 21, 2019

---

**On brief:** *Dave Yost*, Attorney General, and *Matthew J. Donahue*, for appellee.

**On brief:** *Javier H. Armengau*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Javier H. Armengau, appeals a March 26, 2018 judgment of the Franklin County Court of Common Pleas denying his motion to dismiss. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} The facts and procedural history of this case are outlined and detailed in cases *State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452, *State v. Armengau*, 10th Dist. No. 16AP-355, 2017-Ohio-197, and *State v. Armengau*, 10th Dist. No. 17AP-852, 2018-Ohio-4299, and will not be repeated here except as relevant to the appeal before us.

{¶ 3} On August 12, 2014, appellant was sentenced and convicted pursuant to jury verdicts finding him guilty of one count of public indecency (Count 2), four counts of sexual battery (Counts 15, 16, 17, and 18), one count of kidnapping (Count 14), one count of rape

(Count 10), and two counts of gross sexual imposition (Counts 2 and 3), involving multiple victims.  Appellant appealed.

{¶ 4}   On June 22, 2017, this court, in a majority decision, affirmed the trial court judgment in part, reversed in part, and remanded with instructions.  In *Armengau*, 2017-Ohio-4452, at ¶ 136, this court held:

> In summary, appellant's first, second, fourth, fifth, sixth, seventh, and ninth assignments of error are overruled. Appellant's third and eighth assignments of error are sustained.  The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for resentencing as to Counts 10 [rape], 14 [kidnapping], 15 [sexual battery], and 17 [sexual battery].  The court will vacate appellant's Tier III sex offender classification and apply the sex offender classification under the law in effect at the time of the offenses for which he was convicted.

{¶ 5}   The case was remanded to the trial court.  On March 27, 2018,[1] the trial court held a hearing to resentence appellant and address sex offender classification as instructed in *Armengau*, 2017-Ohio-4452.  On April 25, 2018, appellant appealed the trial court's judgment.  This appeal is currently pending before this court.  *See State v. Armengau*, 10th Dist. No. 18AP-300.

{¶ 6}   Prior to the March 27, 2018 resentencing hearing in the trial court, on January 16, 2018, appellant filed a "presentence motion for dismissal pursuant to Crim.R. 29 and the United States Constitution and the Ohio Constitution."  Appellant moved the court to dismiss Counts 8, 10, 14, 15, 16, 17, and 18.  On March 26, 2018, the court denied the motion finding it had previously denied appellant's Crim.R. 29 motion for acquittal and found no good cause to grant or reconsider the motion at this time.  Appellant timely appealed.  This is the trial court judgment pending before us now.

## II. Assignments of Error

{¶ 7}   Appellant appeals and assigns the following two assignments of error for our review:

> I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S PRE-RESENTENCING MOTION TO DISMISS PURSUANT TO R. 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE AND THE OHIO CONSTITUTION AND THE UNITED

---

[1] Corrected Judgment Entry was filed March 28, 2018.

STATES CONSTITUTION AS NOTWITHSTANDING AN AFFIRMING OF THE CONVICTIONS THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT CONVICTION ON COUNTS 8, 10, 14, 15, 16, 17 AND 18 OF THE INDICTMENT AS ACTUALLY CONFIRMED BY THE APPELLATE DECISION OF JUNE 22, 2017.

A. Appellant was indicted for specific alleged crimes occurring in Columbus, Ohio on unknown dates, weeks, months and years but between January 1, 2002 and December 31, 2008 but convicted for alleged offenses occurring in Marion, Ohio on unknown dates, weeks, months or years but between January 1, 1999 and sometime in 2000.

B. Crim.R. 7(D) which was the basis for permitting and affirming the convictions does not permit an amendment to an indictment that changes the name or the identity of the indicted crime and when an amendment changes the factual basis for an amended charge to one at a different time and place the identity of the crime has been changed rendering the amendment legally impermissible.

C. A person can only stand trial, be convicted, sentenced and or resentenced for a specific crime indicted by a grand jury and any conviction requires that the state prove every essential element of the indicted crime beyond a reasonable doubt and the Ohio Supreme Court has determined that the location of the crime (venue of the crime) is a fact and an essential element of the indicted crime that must be proved beyond a reasonable doubt to sustain a conviction.

D. A trial level court can and must dismiss a case against a defendant upon a defendant's motion prior to resentencing when the defendant provides the court with authority from the Ohio Supreme Court and the United States Supreme Court that confirms that the defendant was convicted for crimes for which he was never charged, indicted or provided notice in advance of trial.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S PRE-RESENTENCING MOTION TO DISMISS PURSUANT TO R.29 OF THE OHIO RULES OF CRIMINAL PROCEDURE AND THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION AS NOTWITHSTANDING AN AFFIRMING OF THE CONVICTIONS THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT CONVICTION ON COUNTS 8, 10, 14, 15, 16, 17 AND 18 OF THE INDICTMENT

AS FURTHER CONFIRMED BY THE APPELLATE DECISION OF JUNE 22, 2017 AND THE COURT ERRED IN NOT DISMISSING COUNTS 8, 10, 14, 15, 16, 17 AND 18 AS THE CONVICTIONS WERE BASED ON CHARGES CONFIRMED BY THIS COURT TO HAVE NEVER BEEN CHARGED OR INDICTED OR NOTICED UNTIL MID-TRIAL.

A. The state is required to provide a defendant with notice of a specific crime with reasonable particularity of time and place for which he is to stand trial and providing a defendant with notice of a specific incident upon which the state will rely for conviction mid-trial and that was never indicted by a grand jury and was never disclosed in advance of trial violates the Ohio Constitution and the United States Constitution and a defendant cannot be convicted, sentenced or resentenced of such an alleged crime.

(Sic passim.)

### III. Analysis

{¶ 8} We overrule both assignments of error on grounds of res judicata, law of the case and because, on the merits,[2] we see no cause to revisit the issues raised and previously addressed by this court.

{¶ 9} In *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481, the Supreme Court of Ohio explained the doctrine of res judicata:

Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*Id.* at ¶ 48, citing *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). As discussed below, appellant previously raised, or could have raised the issues he raises now.

{¶ 10} In *State ex rel. Sharif v. McDonnell*, 91 Ohio St.3d 46 (2001), the Supreme Court explained the law of the case doctrine:

"Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no

---

[2] We note that in addition to considering appellant's brief and reply brief, we have also considered his notices of supplemental authority filed March 11, and March 19, 2019 and determine, notwithstanding, there is no cause to remand the merits at issue raised and previously addressed by this court.

> discretion to disregard the mandate of a superior court in a prior appeal in the same case. (*State ex rel. Potain v. Mathews* [1979], 59 Ohio St. 2d 29, 32, approved and followed.)"
>
> We explained that, under this doctrine, a reviewing court's decision was the law in the reviewed case for all legal questions and for all subsequent proceedings in the case. We observed that "the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." As it operates, "the doctrine functions to compel trial courts to follow the mandates of reviewing courts."

*Id.* at 47-48, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984), syllabus.

{¶ 11} The trial court had no discretion to disregard the mandate of this court's previous ruling in *Armengau*, 2017-Ohio-4452, and we see no reason, on the merits, to disregard the same. Our ruling in *Armengau* is addressed below.

{¶ 12} In his direct appeal, appellant raised nine assignments of error. As relevant[3] here, appellant alleged:

> [I.] The trial court erred in permitting the amendment of the indictment and bill of particulars, which even after amendment remained duplicative and lacked the requisite specificity. That error, along with the State's own confusion regarding the relevant conduct underlying these counts, resulted in violations to Mr. Armengau's rights to due process of law, a fair trial, jury unanimity, and the double jeopardy protections to which he was entitled. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Crim.R. 31(A).
>
> * * *
>
> [VI.] The trial court erred in denying Javier Armengau's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of counts 8, 10, 14, 15, 17, and 18.

*Armengau*, 2017-Ohio-4452, ¶ 53.

---

[3] Interwoven in his argument in support of his assignments of error, appellant raises the issue of other acts evidence at page 54 of his brief. In *Armengau*, 2017-Ohio-4452, this court addressed the issue of other acts evidence in its discussion of the second assignment of error. Appellant is referred to ¶ 68-80 in *Armengau*, 2017-Ohio-4452.

{¶ 13} As to the first assignment of error in *Armengau*, 2017-Ohio-4452, this court held:

Appellant's first assignment of error raises multiple issues relating to the charges involving L.M. Appellant first asserts that the trial court erred in allowing the state to amend the indictment and bill of particulars. He also asserts that the trial court allowed the state to try him for unindicted offenses. Finally, he asserts that the indictment and bill of particulars lacked specificity to differentiate duplicative offenses involving L.M., and the result was a patchwork verdict that did not reflect the jury unanimity required by Crim.R. 31(A). Appellant asserts that the trial court erred in denying a mistrial based on these errors, and that he was deprived of his due process rights under the Fifth, Sixth, and Fourteenth Amendments, United States Constitution, and Article I, Sections 10 and 16, Ohio Constitution.

Article 1, Section 10 of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This language "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." *State v. Headley*, 6 Ohio St.3d 475, 478 (1983). The state is entitled to state a count in the indictment in bare statutory language. Crim.R. 7(B). A defendant seeking to clarify the facts of the criminal allegations contained within the indictment may request a bill of particulars "setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense." Crim.R. 7(E). The purpose of the bill of particulars is to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). However, "[a] bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Id.*

1. The L.M. Charges and Amendments

Appellant points out that the charges with respect to L.M. varied between the bill of particulars, the amended bill of particulars, and yet again with L.M.'s testimony. For all offenses, the time frame shifted: 2002 to 2008 inclusive in the indictment, 1999 to 2008 inclusive after amendment of the indictment at trial, and between 1998 and 2003 according to L.M.'s testimony.

The other particulars of the offenses varied as well. For example, as indicted, Count 9 alleged vaginal rape. The first bill of particulars described this as occurring on the couch in appellant's Marion office, with the door locked and appellant's hands in L.M's mouth to silence her. The first and second amended bills of particulars did not alter this description. When opposing the defense's Crim.R. 29 motion for acquittal at the close of the state's case, the state, lacking any testimony from L.M. concerning rape under these circumstances, argued that this offense now rested on L.M.'s description of a possible drugging rape occurring in appellant's Marion office, the first incident she endured. The state's closing statements maintained this theory, in direct contradiction to the state's comments in opening statements, which represented the drugging incident as an unindicted offense. (Tr. at 1463-69, 2355-56.) Based on those transformations, appellant now asserts that he ultimately was tried (albeit acquitted) for the crime of rape through induced intoxication, R.C. 2907.02(A)(1)(a), when the indictment charged rape through submission by force or threat of force, R.C. 2907.02(A)(2).

Similarly, Count 10 of the indictment alleged oral rape, and the conduct supporting this shifted over the course of trial. The initial bill of particulars did not provide details for this offense. The second amended bill of particulars specified that appellant "did force [L.M.] to have oral sex with him in his Marion office by telling her to 'do it' and forcing his penis into her mouth." (June 22, 2014 Second Amended Bill of Particulars at 2).

Finally, Count 14 of the indictment alleged kidnapping with purpose to engage in sexual activity. The first bill of particulars tied this conduct to an office couch rape involving a locked door and appellant's hand in the victim's mouth to silence her; after the various amendments to the bills of particulars regarding the three original counts of vaginal rape (Counts 9, 12, and 13) in the indictment, this conduct matches only Count 9. (The second amended bill of particulars described Counts 12 and 13 to conform to L.M.'s testimony of rapes in a white truck.) The second amended bill of particulars further altered the facts so that the kidnapping in Count 14 now alleged restraint of liberty in furtherance of compelled oral sex, thus detaching Count 14 from the vaginal rape in Count 9 and attaching it to one of the two oral rape counts, either Count 10 or 11.

There is no doubt that the evidence heard at trial forced a steady evolution of the state's theory of the case for the offenses

involving L.M. However, the law, in the form of Crim.R. 7(D), contemplates that this circumstance will arise in many criminal cases and the state will not be irremediably bound to the facts available at the outset of trial: the state may amend the indictment and bill of particulars so long as "no change is made in the name or identity of the crime charged." Crim.R. 7(D); *State v. White*, 10th Dist. No. 06AP-607, 2007-Ohio-3217, ¶ 17. And even in cases where the state has not amended the bill of particulars, "Crim.R. 33(E)(2) states that a verdict shall not be set aside, nor shall any judgment of conviction be reversed because of a variance between the allegations and the proof unless the defendant is misled or prejudiced by the variance." *State v. Kersey*, 124 Ohio App.3d 513, 518 (1st Dist.1997).

Ultimately, the initial lack of specificity and the court's allowance of serial amendments did not materially prejudice appellant. Apart from the dates of the offenses, which remained imprecise, the charges against appellant were sufficiently specific to allow an effective defense, which ultimately was successful as to certain charges. With respect to the variations in dates, appellant's defense did not rely on alibis or impossibility for the open dates given in the indictment, and "[t]he precise date and time a rape occurs is not an essential element of the crime." *State v. Reinhardt*, 10th Dist. No. 04AP-116, 2004-Ohio-6443, ¶ 20, citing *State v. Madden*, 15 Ohio App.3d 130 (12th Dist.1984). Appellant's defense relied on absolute denial of any sexual activity with L.M. outside of a two-week consensual dating relationship whose timing did not impact the charged crimes. The jury found appellant not guilty of rape by induced intoxication under Count 9, the alleged unindicted offense. Appellant cannot suggest prejudice from the lack of specificity in the bill of particulars or the later amendments.

2. Jury Unanimity

Finally, appellant argues that the complex, and allegedly mismatched, assemblage of facts, testimony, indictment, and amendments of the bill of particulars allowed the jury to produce a "patchwork" verdict in violation of Ohio's requirement of jury unanimity, under Crim.R. 31(A). Pursuant to that rule, jurors must unanimously agree not only on the defendant's guilt, but as to proof as to each element of the crime. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 37. While unanimity is not required on the manner in which each element is satisfied in an "alternative means" case, the distinction must be made between "alternative means" cases

and "multiple acts" cases. *Id.* at ¶ 48-51. Appellant argues that both the state's tactics and the court's jury instructions invited a less-than-unanimous verdict.

In alternative-means cases, an offense may be committed in more than one way and jury unanimity is required for the crime itself but not the means by which it was committed. *Gardner* at ¶ 49. In multiple-acts cases, several different acts can constitute the charged crime, and jury unanimity is required as to which act or incident supports the crime. *Id.* at ¶ 50. In a multiple-acts case, the jury must be unanimous as to which act or incident constitutes the crime. To ensure this, the state must specify the particular criminal act upon which it relies for conviction, and the trial court must "instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *Id.* It follows that in a case where multiple crimes are charged, the jury must unanimously agree on which underlying criminal act supports any given charge.

Here, appellant's counsel requested a jury instruction expressly advising the jury to consider each count separately, uninfluenced by their conclusion as to any other count. This was not given. The state requested an alternative-means instruction, which was given. The court then advised the jury only in general terms regarding unanimity, without elaborating on the need to consider the counts independently: "Before you can find the defendant guilty, you must unanimously agree on your verdict." (Tr. at 3830.) Because counsel did not object to the jury instructions as given, we review the issue under a plain-error standard. *State v. Hartman*, 93 Ohio St.3d 274, 289 (2001). Plain error exists where the outcome of the trial would clearly have been different but for the error. Crim.R. 52(B); *State v. Biros*, 78 Ohio St.3d 426, 431 (1997); *State v. Long*, 53 Ohio St.2d 91, 97 (1978). The plain error rule must be applied with the utmost caution and invoked only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 62; *State v. Cooperrider*, 4 Ohio St.3d 226, 227 (1983).

Appellant argues that his case is a multiple-acts case, not an alternative-means case, and that the state improperly led the jury to believe that various acts, occurring in different places and at different times, could support conviction for a given count as long as jurors all agreed that some of the acts had been committed, although not necessarily agreeing as to which ones. Because L.M. testified, not only as to specifics, but as to

continuous sexual conduct occurring on at least a weekly basis over a period of years, he asserts that it becomes impossible to ascertain which aspect of the testimony the jury unanimously relied upon to convict for any particular criminal count.

The jury verdict reflects, to the contrary, that the jury was able to clearly differentiate the various specifics supporting each offense. L.M.'s general testimony of ongoing and continual abuse does not compel the conclusion that the jury confused the various specific incidents she described. These included four specific incidents of vaginal or oral rape and an incident of compelled fellatio in her Dublin apartment in which appellant made L.M. lock her young child away in another room. L.M.'s testimony was sufficiently precise in describing the major incidents outlined above. While we, of course, do not take the blanket position that a partial acquittal disproves all error, in this case, under a plain error standard, the fact that the jury refused to convict on some of these counts even while returning a guilty verdict on the others tends to refute the possibility of a patchwork verdict. We find that the outcome of the case would not have been clearly different had the requested instruction been given or the counts particularized more consistently in the course of prosecution.

In summary, we conclude that appellant was not deprived of his constitutional due process rights by the form of the indictment, the subsequent amendment thereof, the form of the bill of particulars through multiple amendments, and the jury instructions provided by the court. We overrule appellant's first assignment of error.

*Id.* at ¶ 54-67.

{¶ 14} As to the sixth assignment of error, this court held in *Armengau*, 2017-Ohio-4452:

### E. Venue

Appellant's sixth assignment of error asserts that appellant's convictions under Counts 8, 10, 14, 15, 17, and 18 of the indictment must be reversed because the state failed to present evidence to support venue for those crimes as charged in the indictment, and the trial court accordingly erred in denying appellant's Crim.R. 29 motion made after the state rested. We disagree.

Under Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the

evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37; *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 16. "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.*; *see also State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 94; *State v. Crosky*, 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 43.

1. Legal Standards

Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state. "[J]urisdiction and venue are not the same, as the former denotes the power of the court to hear the case and the latter denotes the situs of trial." *State v. Giffin*, 62 Ohio App.3d 396, 403 (10th Dist.1991), citing *State v. Loucks*, 28 Ohio App.2d 77 (4th Dist.1971). Proper venue insures that "the state [does not] indiscriminately [seek] a favorable location for trial or [select] a site that might be an inconvenience or disadvantage to the defendant." *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241, ¶ 12, quoting *State v. Gentry*, 61 Ohio Misc.2d 31, 34 (1990). The fact that venue is not a restriction on territorial jurisdiction is underscored by the provisions of Crim. R. 18(B) and R.C. 2901.12(K), which provide for a change of venue if the trial court finds that a fair and impartial jury cannot be seated in the court where the action is pending.

Because venue is neither a jurisdictional nor a material element of a criminal offense, the indictment is only required to contain an allegation that the offense was committed within

the jurisdiction of the court. *State v. Andrews*, 148 Ohio App.3d 92 (10th Dist.2002). Even when multiple offenses are alleged in an indictment, an indictment is not rendered invalid where the "place has been stated once therein." *State v. Williams*, 53 Ohio App.3d 1 (10th Dist.1988). While venue is not a material element of the offense as charged, it is a fact that the state must prove beyond a reasonable doubt unless waived by a criminal defendant. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, ¶ 22; *State v. Birt*, 12th Dist. No. CA2012-02-031, 2013-Ohio-1379, ¶ 27. "Venue need not be proven in express terms; it may be established either directly or indirectly by all the facts and circumstances of the case." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, ¶ 144.

The indictment in the present case alleged for each count that the criminal conduct occurred "within the county of Franklin." (May 20, 2013 Indictment, Counts 1 through 18.) Appellant argues that for all but three of the counts for which he was convicted, the state failed to prove venue because it introduced no evidence at all that the crimes occurred in Franklin County: for Counts 8 (gross sexual imposition, K.R.), 10 (rape, L.M.), 14 (kidnapping, L.M.), and 15, 17, and 18 (sexual battery, L.M.), the only evidence heard placed the offenses in Marion County. In contrast, for Counts 2 and 3 (public indecency and gross sexual imposition, C.C.), and Count 16 (sexual battery, L.M.), appellant concedes on appeal that the evidence supported venue in Franklin County. At the close of the state's case, the defense moved, unsuccessfully, for a Crim.R. 29 acquittal for those incidents for which the evidence established the location as Marion County. Appellant argues that the trial court erred when it denied his Crim.R. 29 motion.

The state responds that any deficiency in the indictment was cured by subsequent amendment of either the indictment or the bill of particulars. We disagree. It is the language of the indictment that defines the venue for which the state bears the burden of proof. Hampton, supra, at ¶ 23. As stated above, the original indictment specified Franklin County as venue for all crimes. The state never amended the venue allegation in the indictment. Therefore, the state had to prove that venue was proper in Franklin County.

The state also argues that all crimes took place as part of a course of criminal conduct across several jurisdictions, including Franklin County, establishing venue in Franklin County under the course of criminal conduct terms of R.C.

2901.12(H). We conclude that the state presented sufficient evidence to prove venue under the course of criminal conduct provisions in R.C. 2901.12(H).

2. Venue and Course of Criminal Conduct–R.C. 2901.12(H)

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. R.C. 2901.12(H). To establish a course of criminal conduct, the statute provides in relevant part:

(H) * * * Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1)  The offenses involved the same victim, or victims of the same type or from the same group.

(2)  The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3)  The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4)  The offenses were committed in furtherance of the same conspiracy.

(5)  The offenses involved the same or a similar modus operandi.

(6)  The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

R.C. 2901.12(H).

"R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries." *State v. Draggo*, 65 Ohio St.2d 88, 90 (1981). Consistent with this multi-county venue, "a grand jury of one county has authority to indict on offenses occurring in other counties provided that those offenses are

part of a course of criminal conduct." *State v. Ahmed*, 8th Dist. No. 84220, 2005-Ohio-2999, ¶ 11. The Supreme Court of Ohio confirmed the law as stated in *Ahmed* when it decided *Jackson* at ¶ 131:

There is no constitutional or statutory provision that prohibited the Cuyahoga County Grand Jury from indicting Jackson for offenses that occurred in Erie and Lorain Counties as part of a course of criminal conduct that included crimes within Cuyahoga County. R.C. 2901.11 and 2901.12 permit a grand jury to indict an offender for offenses that occurred outside the county, provided that the offenses are part of the same course of criminal conduct that took place in the county in which the grand jury resides.

The present case involves a series of offenses that fit four of the criteria enumerated in R.C. 2901.12(H). The victims were "of the same type, or from the same group" under R.C. 2901.12(H)(1), because they are associated with appellant's law practice as clients, relatives of clients, or employees. The offenses were committed "in the offender's same employment, or capacity, or relationship to another" under R.C. 2901.12(H)(2), again based on the centrality of appellant's law practice in his selection of victims. The offenses involved "the same or similar modus operandi" under R.C. 2901.12(H)(5), based on the grooming and exploitation of vulnerable female clients or relatives of clients. Finally, the offenses were committed in furtherance of the same purpose or objective (sexual gratification). R.C. 2901.12(H)(3).

A similar case involving abuse of clients in a professional practice is persuasively on point. In *Ahmed*, the defendant, a licensed obstetrician and gynecologist, operated medical offices in several counties. The grand jury in Cuyahoga County returned an indictment charging him with multiple counts of rape, sexual imposition, and sexual battery involving 37 former patients. The indictment specified that the offenses occurred at Ahmed's offices in Cuyahoga, Summit, and Geauga counties. After disposing of the preliminary question of whether the grand jury could return an indictment addressing the out-of-county crimes, the Eighth District Court of Appeals found that trial venue in Cuyahoga County for all offenses was appropriate: "The evidence at trial revealed that all of the victims were Ahmed's patients, all of the offenses occurred at his medical offices while the victims were seeking medical care from him, and while situated in a vulnerable position. Further, each victim identified the office location

where the offense(s) occurred. Based on this evidence, we find that the State adequately proved that venue was proper." *Ahmed* at ¶ 18.

*Ahmed* presented the same type of course of criminal conduct that the state alleges here. Based on this precedent and analysis of the applicable statutes governing venue, we conclude that the state proved venue was proper in Franklin County for Counts 8, 10, 14, 15, 17, and 18 of the indictment.

Citing *Hampton*, appellant argues that because the indictment alleged the conduct associated with Counts 8, 10, 14, 15, 17, and 18 occurred in Franklin County, the state could only establish venue by proving that the alleged conduct occurred in Franklin County. We do not read *Hampton* so restrictively. *Hampton* involved a situation where all of the alleged criminal conduct occurred outside the county where the case was venued. Therefore, R.C. 2901.12(H) was not applicable. Moreover, the Hampton court noted that "[t]he General Assembly has given the state considerable flexibility with respect to establishing venue," citing R.C. 2901.12(G) as an example. *Hampton* at ¶ 23. *See also State v. Young*, 9th Dist. No. 15CA010803, 2017-Ohio-1400, ¶ 15-16 (finding no authority for proposition that an indictment must include "course of conduct" language when the state intends to proceed under R.C. 2901.12(H)). Lastly, appellant was on notice that the state would establish venue by proving the conduct occurred in Franklin County "or otherwise properly venued under R.C. 2901.12, the defendant, as part of a criminal course of conduct as defined in R.C. 2901.12(H)(1), which encompassed at least, Franklin and Marion Counties, Ohio." (June 1, 2014 Bill of Particulars at 6.) As previously noted, the indictment alleged and the state proved, that some of the alleged criminal conduct occurred in Franklin County and that the other offenses in Counts 8, 10, 14, 15, 17, and 18 were committed pursuant to a course of criminal conduct as defined in R.C. 2901.12(H).

3. Conclusion

For all of these reasons, we overrule appellant's sixth assignment of error.

*Id.* at ¶ 104-117.

{¶ 15} Appellant argues before us now that our decision in *Armengau*, 2017-Ohio-4452, raises additional questions which required the trial court to grant his pre-sentencing motion to dismiss. He asks this court to consider the following issues:

> Whether a trial level court who had a motion for dismissal pending at the time of resentencing must dismiss a case when the content of the appellate decision not only raises additional questions as to whether Appellant was wrongfully convicted, whether he received a fair trial based on prosecutorial misconduct and standing trial for alleged crimes for which he was never charged or indicted, but whether precedent that was disregarded by this Court from the United States Supreme Court and the Ohio Supreme Court and its own Court should have resulted in Appellant's acquittal and whether a trial court can even resentence a defendant when his convictions are undeniably contrary to clearly established state and federal law?

> Whether a trial level Court must dismiss the relevant counts in an indictment pursuant to motion when the appellate decision confirms that Appellant was never charged or indicted for the specific crimes for which he was tried and convicted?

(Appellant's Brief at 7.)

{¶ 16} These are issues appellant could have raised in a motion to reconsider in *Armengau*, 2017-Ohio-4452.[4] Appellant did not file a motion to reconsider this court's decision in *Armengau*, 2017-Ohio-4452.

{¶ 17} Appellant did, however, file an appeal with the Supreme Court. The Supreme Court did not accept his appeal for review. *See State v. Armengau*, 2018-Ohio-365. The Supreme Court also denied appellant's subsequent motion requesting reopening of appeal. *See State v. Armengau*, 2018-Ohio-1600. The Supreme Court denied another motion filed by appellant on April 30, 2018. Finally, the Supreme Court denied appellant's July 2, 2018 motion requesting the court grant motion and supplemental notice.

---

[4] "The test generally applied to an application for reconsideration is whether the application calls to the court's attention 'an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been.' " *State v. Lawson*, 10th Dist. No. 12AP-53, 2013-Ohio-803, ¶ 7, quoting *Matthews v. Matthews*, 5 Ohio App.3d 140, 143 (10th Dist.1981).

{¶ 18} Finally, we note appellant has made another attempt to raise the same issues raised in this appeal and in his direct appeal in his appeal of the resentencing now pending before this court in *State v. Armengau*, 10th Dist. No. 18AP-300.[5]

{¶ 19} In *Griffin* at ¶ 52, the Supreme Court emphasized:

> " '[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' * * * We have stressed that '[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts.' "

(Citations omitted.)

{¶ 20} For the reasons outlined above, we overrule appellant's first and second assignments of error.

## IV. Conclusion

{¶ 21} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

--------

[5] *See* third assignment of error in case No. 18AP-300.